**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ERIC JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 C 3232 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| AMAZON.COM SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Eric "Old Kool" Jones brings this action against Amazon.com Services, LLC (Amazon) under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. (Dkt. 1.) Jones asserts that Amazon intentionally discriminated against him, failed to accommodate him, harassed him, and retaliated against him—all on the basis of his disability.[1] Amazon moves for summary judgment, arguing that Jones voluntarily resigned from Amazon after 23 days of work, that his resignation was the sole cause of his separation, and that Amazon told Jones to reapply for a position. For the reasons stated below, Amazon's motion (dkt. 35) is granted.

**BACKGROUND**[2]

**I.      Employment at Amazon**

Jones applied to Amazon to be a Fulfillment Center Warehouse Associate on November 21, 2023. The job description for the position described it as a "fast-paced, physical role[]" preparing orders for Amazon customers. (Dkt. 36-2 at 2–3.) Responsibilities include receiving

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is appropriate in this district because all parties reside in this district and the events or omissions giving rise the claim occurred in this district. 28 U.S.C. § 1391(b)(1), (2).

[2] Facts are drawn from those included in parties' Rule 56 disclosures and that were admitted to by the other party. Where there is disagreement between the parties, it is noted.

and putting away inventory, loading boxes onto trucks, and operating powered industrial trucks like a forklift or pallet driver. Associates need to be able to lift up to 49 pounds, push carts up to 60 pounds, go up and down stairs, and do a range of physical movements, among other requirements. Jones saw the job description when he applied for the job.

Amazon hired Jones as an associate on December 15, 2023, and he began work the following day, starting with orientation. During orientation, Jones was provided with and acknowledged Amazon policies concerning employees with disabilities, which state that employees with disabilities are to work with Disability and Leave Services (DLS) to identify reasonable accommodations. He also was informed that employees could seek accommodation through the A to Z App (the App), which is an app maintained by Amazon for employee services, including requesting time off, submitting accommodation requests, or submitting resignations. On their first day, associates are trained in using the App. Within the App, the accommodation request section is separate from the section for submitting a resignation. To submit a resignation, an associate selects an option titled "Thinking about leaving Amazon," then selects the date and reason for resignation.

Once Jones completed his orientation, he was assigned to work the cherry-picker in "stow." This position requires associates to use a stand-up cherry picker to take, scan, and place cases of goods onto racks. Jones objected to his assignment, saying he applied for a position where he would drive a "swing reach" or a "turret truck." Operating these machines would allow him to sit down while working, which he needed to do on account of his disability. Jones suffers from chronic bilateral low back pain without sciatica and sacroiliac arthritis, which prevents him from lifting heavy objects, standing for long stretches without breaks, and walking extended distances without an assistive device.

2

Jones's account of when he informed Amazon of his need for accommodation shifts. In his response to Amazon's statement of facts, Jones asserts that by informing Amazon during his application process that he was seeking to work on the turret truck due to his disability, he had requested an accommodation. In his deposition, Jones testified that in his interview he said he was "only applying for the turret truck position because, as long as [he] could do that position, there would be no need for accommodations." (Dkt. 36-5 at 26:20–27:6.) He then clarified, however, that he did not discuss accommodations at time of his interview or application.

Rather, Jones brought up accommodations during his orientation when he told his Learning Trainer, Jeremiah, that he did not know how long he would be able to do the stow position, as he had expected to be working on a machine in which he could sit down because he cannot stand for long periods of time. Jones contends that Jeremiah laughed at him but acknowledges that Jeremiah then directed him to apply for an accommodation. Jones made similar statements to between one and four other trainers whose names he cannot recall, and each of them similarly advised him to apply for an accommodation, though he alleges they suggested he wait until after the holidays. In response, Jones said, "I'll go and get the documentation as soon as possible." (Dkt. 36 ¶ 28; dkt. 36-5 at 42:4–20.) Jones testified that he also asked the trainers to put him on the "different schedule for turret truck operators." (Dkt. 36-5 at 46:18–47:7.) He conceded he did not think the trainers actually "ha[d] the authority to do it" as they were "just in charge of training and orientation." (Dkt. 36-5 at 47:13–18.) Representatives from Amazon testified that the turret truck at Jones's location operated intermittently for approximately thirty minutes per day and that no associate at Jones's warehouse location drives a turret truck as their sole job duty.

**II.      Resignation from Amazon**

On January 8, 2024, about three weeks after he began working, Jones submitted his voluntary resignation via the App, listing "Family Move or Circumstances" as the reason. Jones does not dispute that he submitted the resignation, nor that he had been trained on the App, but contends that he resigned by accident while attempting to navigate the App to request medical leave and disability accommodations. Amazon processed Jones's resignation on January 9, 2024, and on January 10, 2024, Jones received a letter confirming his voluntary termination, effective January 9, 2024.

Jones claims he and his son, Laronn, called Amazon's DLS line on January 9, 2024, to explain the error and request that the resignation be rescinded. Laronn asserts that an Amazon representative acknowledged the mistake and stated they would "try to help correct it." (Dkt. 48-3 ¶ 7.) Amazon, however, maintains it has no record of Jones's asking his resignation be rescinded during a January 9 communication; rather, Amazon's first record of a rescission request dates January 12, 2024, after the termination had already been processed. Internal Amazon records from January 10 indicate that Jones called saying he had been "terminated while on leave" and wanted to know the "next step." (Dkt. 36-16 at 3.) Amazon did not reinstate Jones.

As to Jones's accommodation request, Amazon's first record of such a request is from January 9, when Jones called HR after realizing he had mistakenly resigned the day before. The HR representative helped Jones complete his accommodations request over the phone, and the request was approved, as his resignation had not yet been processed. Jones asserts the HR representative also said they would try to help to rescind his resignation. Once Jones's resignation was processed, however, DLS closed his accommodation file on January 10, 2024, and closed his leave file on January 17, 2024.

Meanwhile, Jones made and attended a medical appointment on January 10, 2024, with Advanced Practice Registered Nurse Alisha Jackson, to get documentation supporting his accommodation request. Jackson documented Jones's chronic bilateral low back pain and sacroiliac arthritis, and identified physical restrictions, including inability to lift heavy objects, inability to sit or stand for prolonged periods without breaks, and inability to walk for extended distances without an assistive device. Jackson prepared a letter for Jones indicating that he should not operate a standing forklift, should work only on the powered industrial truck, should not lift more than ten pounds, and should not stand more than one hour without a ten-minute break.

After Jones received his termination letter on January 10, he contacted Amazon's HR hotline on January 12, stating he had resigned by mistake and wished to be reinstated. The first HR representative he spoke with checked with DLS, confirmed the resignation had been processed, and informed Jones he would need to speak with site HR about reinstatement. The HR representative submitted a ticket to site HR noting Jones's request. Jones spoke to a second HR representative on January 12, who similarly informed him that the records showed he had resigned. When Jones called again on January 17, another HR representative confirmed that the system showed he had resigned and informed him he was welcome to re-apply for a position. On January 19, Amazon emailed Jones confirming that his resignation had been processed and inviting him to re-apply. Jones did not re-apply.

Amazon does not have a policy to rescind an associate's resignation, nor does it have a policy regarding reinstatement of employees after resignation. Instead, associates who resign and would like to return are asked to re-apply for a position. Amazon's corporate representative, John Maluta, testified that in his experience overseeing approximately 1,500 employees, he was aware

5

of only five employees who had requested to rescind their resignations; in none of those cases was the resignation rescinded. Amazon's HR representative at Jones's warehouse location, Nivin Varghese, was aware of only one instance in nearly four years in which an Amazon employee had resigned and then asked to be reinstated; the employee was asked to re-apply rather than reinstated. Jones's manager was not aware of any associate who had resigned and returned to work without re-applying. Jones cannot identify any other associate who voluntarily resigned and was allowed to continue working at Amazon without re-applying.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The law considers a dispute genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lord* v. *Beahm*, 952 F.3d 902, 903 (7th Cir. 2020) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba* v. *Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted).

The moving party "bears the burden of demonstrating the absence of genuine issues of material fact." *LaRiviere* v. *Bd. of Trs. of S. Illinois Univ.*, 926 F.3d 356, 359 (7th Cir. 2019) (citation omitted). If the moving party meets that burden, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Id*. (citing *Spierer* v. *Rossman*, 798 F.3d 502, 507 (7th Cir. 2015) (citation omitted).

6

**ANALYSIS[3]**

### I.     Disability Discrimination Claim

Jones claims that Amazon discriminated against him in violation of the ADA by terminating his employment and refusing to rescind his unintentional resignation because of his disability.[4] The ADA prohibits employers from discriminating against a qualified employee on the basis of disability. 42 U.S.C. § 12112(a); *Stanley* v. *City of Sanford*, 606 U.S. 46, 49 (2025). To survive summary judgment, a plaintiff claiming disparate treatment in violation of the ADA can prove his case under two different methods of proof: the direct method or the indirect method. *Bunn* v. *Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). Because Jones cannot establish the essential elements of either method, summary judgment in favor of Amazon is warranted on his discrimination claim.

### A.  The Direct Method

The direct method of proof requires a plaintiff to demonstrate that "a genuine issue of material fact exists with respect each of the three elements he will eventually be required to prove at trial: (1) that the plaintiff is disabled within the meaning of the ADA; (2) that the plaintiff is qualified to perform the essential functions of the job with or without accommodation; and (3) that the plaintiff has suffered an adverse employment action because of his disability." *Id.*

---

[3] Cited caselaw references several statutes besides the ADA, including Title VII, the Age Discrimination in Employment Act (ADEA), and the Family and Medical Leave Act (FMLA). This is appropriate, as the same standards in those statutes apply to the ADA with respect to employment claims. *See Raytheon Co.* v. *Hernandez*, 540 U.S. 44, 52–53 (2003) (applying the *McDonnell Douglas* burden-shifting framework under Title VII to the ADA); *Miranda* v. *Wis. Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996) ("[I]n analyzing claims under the ADA, it is appropriate to borrow from our approach to the respective analog under Title VII.").

[4] Jones also claims disability-based harassment. However, this claim fails because Jones did not address his harassment claims in his response to Amazon's motion. *See Nichols* v. *Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

Amazon primarily challenges the third element: whether Jones suffered an adverse employment action because of his disability.[5] An adverse employment action generally "fall[s] into [one of] three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton* v. *Zimmer*, 662 F.3d 448, 453–54 (7th Cir. 2011) (citation omitted). Though termination is an adverse employment action, *Brooks* v. *Avancez*, 39 F.4th 424, 434 (7th Cir. 2022), where the circumstances do not suggest constructive discharge, a voluntary resignation does not constitute an adverse employment action. *Andrews* v. *CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014), *overruled on other grounds by Ortiz* v. *Werner Enters., Inc.*, 843 F.3d 760 (7th Cir. 2016) (internal citation omitted).

The uncontested facts establish that Jones voluntarily resigned from his position at Amazon on January 8, 2024, by submitting his resignation through Amazon's App. Jones does not dispute that he submitted the resignation, nor that he was trained on the App. As Jones does not allege constructive discharge, his voluntary resignation does not, on its own, constitute an adverse employment action. *Andrews*, 743 F.3d at 235.

In his response, however, Jones argues that Amazon's refusal to rescind his resignation is itself an adverse action, as Amazon had knowledge that his resignation was accidental and that he had sought accommodations. This argument requires the court to consider whether an

---

[5]Although Amazon notes in a footnote that Jones has not established disability within the meaning of the ADA, Jones responds with a declaration from Advanced Practice Registered Nurse Alisha Jackson attesting to Jones's lower back pain and sacroiliac arthritis. The court assumes for purposes of this motion that Jones satisfies the first two elements and focuses on whether he suffered a materially adverse employment action because of his disability.

employer's refusal to rescind an employee's voluntary resignation can itself constitute an adverse employment action, and if so, whether Jones has shown that he was refused recission because of his disability.

Jones relies heavily on unpersuasive, out-of-circuit authority for his argument. Jones cites *Porter* v. *Houma Terrebonne Housing Authority Board of Commissioners* for the proposition that an employer's refusal to rescind a resignation constitutes an adverse employment action. 810 F.3d 940 (5th Cir. 2015). In *Porter*, the plaintiff endured six years of ongoing sexual harassment by the executive director of her company. *Id.* at 943. She submitted her resignation but subsequently decided to rescind it after multiple supervisors encouraged her to stay. *Id.* at 944. The executive director, however, against the advice of plaintiff's supervisor, rejected her rescission. *Id.* The plaintiff identified at least four other employees had previously been allowed to rescind their resignations. *Id.* at 947–48. The Fifth Circuit found the refusal to accept plaintiff's rescission was an adverse employment action because the employer had a practice of permitting rescissions, multiple supervisors invited the plaintiff to stay, and the decision was made by the very individual engaged in the protected-activity-based retaliation.[6] *Id.* at 947–51.

The facts here stand in stark contrast. Amazon has no policy or practice of rescinding accepted resignations. Jones has identified no similarly situated employee who was permitted to rescind a resignation. Indeed, Amazon's corporate representative testified that about five

---

[6] Jones also cites *Ferrando-Dehtiar* v. *Anesthesia Grp. of Albany, P.C.*, 727 F. Supp. 3d 165 (N.D.N.Y. 2014). That case is likewise unpersuasive, and, as Amazon notes, *Ferrando-Dehtiar* does not involve an unintentional or medically influenced resignation and contains no facts concerning disability status or accommodation requests. *Id.* To the extent *Ferrando-Dehtiar* is relevant, it cuts against Jones, as the court there found that the employer's refusal to rescind could be pretextual when the employer took three months to decide that the plaintiff would not be allowed to rescind her resignation and she was contractually obligated to continue working for nearly four months after her attempted rescission. *Id.* at 191. Here, the undisputed facts state that Jones inadvertently resigned on January 8, 2024, and Amazon processed that resignation on January 9. Jones presents no comparable evidence of delay, ongoing employment, or discriminatory motivation in Amazon's processing of his resignation, so *Ferrando-Dehtiar* is unpersuasive.

employees had requested to rescind their resignations, but Amazon did not grant their requests and instead told them to reapply, just as it did to Jones. Unlike in *Porter*, Jones cannot point to distinct facts to support his claim that Amazon's failure to reinstate him after his resignation was an adverse employment action. Furthermore, the Fifth Circuit itself acknowledged that "[o]ther courts have found" that a failure to accept a rescinded resignation is not an adverse employment action because employers do not have a duty to permit employees to rescind resignations. *Id.* at 946 (citing *Cadet* v. *Deutsche Bank Secs. Inc.*, No. 11 CIV. 7964 CM, 2013 WL 3090690, at *13 (S.D.N.Y. June 18, 2013)).

The uncontested facts show that Amazon processed Jones's resignation in accordance with its standard practices and promptly invited him to reapply for employment. Jones has presented no evidence that Amazon deviated from its standard resignation-processing procedures in his case, let alone that any such deviation was motivated by his disability. Accordingly, Jones cannot establish the third element of his discrimination claim under the direct method.

## B.  The Indirect Method

Under the *McDonnell Douglas* burden-shifting scheme, a plaintiff relying on the indirect method of proof must first establish a *prima facie* case of discrimination by "show[ing] that: (1) he is disabled under the ADA, (2) he was meeting his employer's legitimate employment expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees without a disability were treated more favorably." *Lloyd* v. *Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009); *see McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973); *see also Bunn*, 753 F.3d at 685 ("When an employee cannot make out a *prima facie* case, that is the end of it; summary judgment is warranted."). Once a plaintiff has established all four elements, the burden shifts to the defendant to articulate a nondiscriminatory reason for the adverse

employment action. *Buie* v. *Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). If the defendant can do so, then the burden shifts back to the plaintiff who must prove by a preponderance of the evidence that the defendant's stated reasons were pretextual. *Id*.

As with the direct method, Jones cannot establish the third element, an adverse employment action, because his voluntary resignation does not constitute an adverse action, and he has produced no evidence that Amazon's refusal to rescind was motivated by his disability. The absence of this essential element is fatal to Jones's *prima facie* case under the indirect method as well.

Jones also independently fails the fourth element of the indirect method. To establish that similarly situated employees without disabilities were treated more favorably, Jones must identify an employee "directly comparable [to himself] in all material aspects" who was treated differently. *Bunn*, 753. F.3d at 685 (citing *Radue* v. *Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)). Jones identifies no such comparator. As with the direct method, Jones has not established that any other employee was allowed to rescind their resignation, regardless of his disability status. The evidence presented is insufficient to create a genuine issue of material fact as to the fourth element.[7]

Jones cannot establish a *prima facie* case of disability discrimination under either the direct or the indirect method. In the alternative, Amazon has articulated a legitimate, non-

---

[7] Even assuming *arguendo* Jones could establish a *prima facie* case, Amazon has articulated a legitimate, non-discriminatory reason for Jones's separation from employment: Jones voluntarily resigned and Amazon processed his resignation request in accordance with its standard policies. Under the burden-shifting scheme, Jones would need to prove that Amazon's stated reason is pretextual. *See Monroe* v. *Ind. Dept. of Transp.*, 871 F.3d 495, 505 (7th Cir. 2017) ("Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action.") (citations omitted). Jones argues Amazon's reasoning is pretextual because it was aware that Jones inadvertently resigned and refused to reinstate him. However, Amazon has no practice of rescinding resignations, Jones's resignation was processed in accordance with Amazon's routine practice, and Jones was asked to reapply. The fact that Jones's resignation was unintentional does not establish that Amazon's decision to honor it was motivated by his disability rather than its neutral administrative practice.

discriminatory, non-pretextual reason for Jones's separation. Accordingly, summary judgment is granted as to Jones's disability discrimination claim.

## II.  Retaliation Claim

Jones next contends that Amazon retaliated against him for requesting a disability accommodation by refusing to rescind his resignation. To establish a retaliation claim, Jones must show that (1) he engaged in protected activity; (2) he suffered an adverse action; and (3) there is a causal connection between the protected activity and adverse action. *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). In evaluating whether a genuine issue of material fact exists, the court considers the evidence as a whole and asks whether a reasonable jury could draw an inference of retaliation. *Parker v. Brooks Life Science Inc.*, 39 F.4th 931, 936–37 (7th Cir. 2022) (citing *King* v. *Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017)). Circumstantial evidence of causation supporting retaliation may include suspicious timing, ambiguous statements, disparate treatment of similarly situated employees outside the protected group, and evidence of pretextual reasons for an adverse action. *Id*. at 937 (citing *Rowlands*, 901 F.3d at 802). Additionally, "retaliation claims must be proved according to traditional principles of but-for causation. . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or action of the employer." *Univ. of Texas Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 360 (2013).

### A.  Protected Activity

Requesting a reasonable accommodation is protected under the ADA. *See* 42 U.S.C. § 12203(a); *see also Rowlands*, 901 F.3d at 801. It is well established in this circuit that notice of a disability or accommodation request must be "given to either someone with authority to take corrective action or, at a minimum someone who could reasonably be expected to refer the

complaint up the ladder to the employee authorized to act on it." *EEOC* v. *Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 403 (7th Cir. 2024) (cleaned up).

Jones admits that he did not inform Amazon of his need for accommodations in his application or during his interview. Jones did inform his trainer, Jeremiah, that he needed to operate a sit-down turret truck rather than work in stow, due to his need for accommodations. Jones also told several other trainers that he could not stand for long periods and needed to be on the turret truck due to his disability. Yet Jones does not present evidence of Jeremiah's or the other trainers' managerial authority, nor argue that they have any at all. In fact, Jones testified that he did not think that Jeremiah or the other trainers he spoke to "ha[d] the authority" to change his schedule to be that of a turret truck operator, because "they [were] just in charge of training and orientation." (Dkt. 36-5 at 47:13–47:18.) This action by Jones, therefore, does not qualify as his requesting an accommodation and, thus, was not protected activity.

Jones testified he contacted HR on January 6 or 7 to request time off to see a doctor and fill out accommodations request paperwork. Amazon asserts it has no record of contact from Jones on January 6 or 7. Both parties agree Jones contacted HR on January 9 seeking accommodations, but by that time, he had already resigned. And while requesting a reasonable accommodation for a disability is a protected activity under the ADA, requesting time off, as Jones did prior to his resignation, is not. *See Willis* v. *Career Educ. Corp.*, No. 12 C 07662, 2015 WL 3859191, at *8 n.10 (N.D. Ill. June 19, 2015) (quoting *Byrne* v. *Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("The sort of accommodation contemplated by the Act is one that will allow the person to 'perform the essential functions of the employment position.' Not working is not a means to perform the job's essential functions.'")). Even crediting Jones's

13

testimony that he contacted HR to request time off prior to his resignation, such a request was not protected activity.

### B. Adverse Employment Action

The second factor a plaintiff must show for a retaliation claim to survive is that they suffered an adverse action. *Rowlands*, 901 F.3d at 801. As set forth in the court's analysis of Jones's discrimination claim, Jones's voluntary resignation does not constitute a materially adverse employment action, as there is no evidence of constructive discharge. *See Andrews*, 743 F.3d at 235. The same reasoning applies with equal force to Jones's retaliation claim.

### C. Causal Connection

Even if Jones could establish a materially adverse action, his retaliation claim independently fails for lack of a causal connection between his accommodation request and Amazon's processing of his resignation. Under *Nassar*, Jones must show that his protected activity was a "but-for" cause of the adverse action. *Nassar*, 570 U.S. at 360. Jones has produced no evidence establishing that those at Amazon who processed his resignation were aware of any accommodation request he had made, let alone that they were motivated by it. Without evidence that the individuals responsible for processing Jones's resignation knew of his accommodation request, and, crucially, that but for that knowledge they would not have processed (or would have rescinded) the resignation, Jones cannot establish the causal nexus required by *Nassar*.

Jones additionally argues that Amazon's refusal to rescind his resignation even after learning it was unintentional supports an inference of retaliatory motive. As already stated, the undisputed evidence shows that Amazon had no policy of rescinding resignations, that Amazon processed Jones's resignation pursuant to its standard procedures, and that Amazon thereafter invited Jones to reapply. An employer's adherence to a neutral, uniformly applied policy does

14

not, without more, establish retaliatory intent. *See Monroe*, 871 F.3d at 505 (noting that the proper analysis for an employer's potentially pretextual reason for discharging an employee is "whether the employer honestly believed the reason it has offered to explain the discharge" and that "[p]retext … is a lie, specifically a phony reason for some action.") (citations omitted).

Jones cannot establish a protected activity, a materially adverse employment action, or a causal connection between a potential protected activity and any adverse action. Accordingly, summary judgment is granted on his retaliation claim.

### III.    Failure to Accommodate Claim

Jones claims that Amazon failed to provide him with a reasonable accommodation for his disability, in violation of the ADA. Under the ADA, employers are liable if they know of a qualified individual's disability and fail to provide a reasonable accommodation. *EEOC* v. *Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005) (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a failure to accommodate claim under the ADA, Jones must prove: (1) he was a qualified individual with a disability; (2) Amazon was aware of the disability; and (3) Amazon failed to reasonably accommodate the disability. *Conners* v. *Wilkie*, 984 F. 3d 1255, 1261 (7th Cir. 2021); 42 U.S.C. § 12112(a)–(b). The court assumes for the purposes of this motion that Jones is a qualified individual with a disability. *See supra* n.5.

The accommodation process under the ADA is a bilateral, interactive undertaking. *Cloe* v. *City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013) ("Reasonable accommodation under the ADA is a process, not a one-off event."), *overruled on other grounds by Ortiz* v. *Werner Enterps.*, 834 F.3d 760 (7th Cir. 2016). The process begins when the employee informs the employer of the disability and the desire for an accommodation. *Id.*; *see also Jovanovic* v. *In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000) ("[T]he standard rule

is that a plaintiff must normally request an accommodation before liability under the ADA attaches."). If an employer has knowledge that an employee may have a disability requiring accommodation, but the nature of that disability or desired accommodation is not clear, the employer bears the duty to seek clarification. *Sears*, 417 F.3d at 804.

Once the employee provides sufficient notice, the employer must "engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." *Id.* at 805 (citation omitted). An employer's failure to engage in the interactive process or cause a breakdown in the process does not automatically result in ADA liability. *Ozlowski* v. *Henderson*, 237 F. 3d 837, 840 (7th Cir. 2001); *Rehling* v. *City of Chi.*, 207 F.3d 1009, 1016 (7th Cir. 2000).

With respect to the second element—Amazon's awareness of his disability—Jones contends that he put Amazon on notice of his disability when he applied for the position, or at least by his first week of employment when he told his trainers he could not continue to work in stow. Jones argues that he took concrete steps to initiate the accommodation process by discussing his condition with his trainers, attempting to obtain a different assignment, and seeking medical documentation to support his accommodation request. Amazon admits that Jones had a medical appointment on January 10, 2024, to obtain documentation in support of his accommodation request and at that appointment he received a medical note describing his physical limitations. But Amazon argues that the interactive accommodation process never ran its course, because Jones resigned before Amazon could evaluate or act upon any formal accommodation request.

As discussed above, Jones conceded he did not discuss his need for accommodations in his application or in his interview; telling his trainers, who Jones understood not to have

16

managerial responsibilities, about his disabilities did not make Amazon aware of them; and Jones submitted his accommodation request for the first time to HR on the phone on January, after his resignation. Amazon was not aware of Jones's disabilities prior to his January 8 resignation.

Jones's claim also fails on the third element—Amazon's failure to reasonably accommodate—because (1) Jones resigned before Amazon could act on any formal accommodation request, so no denial of accommodation ever occurred; and (2) reinstatement following a voluntary resignation is not a cognizable reasonable accommodation under the ADA.

The undisputed facts as recited above establish that Jones did not make a formal request for accommodation until January 9, 2024, the morning after his resignation, and the request was closed when Jones's termination processed the next day. Because Jones resigned before Amazon could grant or deny his request for accommodation, no denial occurred. *See Tarpley* v. *City Colleges of Chi.*, 752 F. App'x 336, 350 (7th Cir. 2018) (affirming grant of summary judgment for defendant on plaintiff's reasonable accommodation claim because plaintiff resigned before defendant employer made a decision regarding her request, and, thus, no denial of her request occurred).

The Seventh Circuit has made clear that the "interactive process" is a means to an end, not an end in itself. *Sieberns* v. *Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1023 (7th Cir. 1997). When an employee voluntarily resigns, the employer's obligation to continue the accommodation process generally terminates. While Jones insists his resignation was unintentional, the legal effect remains: the employment relationship ended by the employee's own hand before Amazon could evaluate any formal accommodation request.

Jones argues in the alternative that Amazon was required to reinstate him as part of the accommodation process because the need to reinstate resulted from Amazon's own refusal to

17

engage in the interactive process. This argument fails. The statutory definition of "reasonable accommodation" encompasses modifications to the job application process, work environment, or manner in which work is performed, not the restoration of employment following a voluntary departure. *See* 42 U.S.C. § 12111(9). "No ADA case in the Seventh Circuit has ever construed 'reasonable accommodation' to include reinstatement following an employee's resignation." *Wooten* v. *Acme Steel Co.*, 986 F. Supp. 524, 528–29 (N.D. Ill. 1997) (collecting cases). Jones points to no binding authority to the contrary, and the court is aware of none.[8]

In sum, Jones resigned before Amazon could act on any accommodation request, and reinstatement following a voluntary resignation is not a cognizable reasonable accommodation under the ADA. Because Jones cannot establish that Amazon failed to reasonably accommodate his disability, Amazon is entitled to summary judgment on Jones's failure to accommodate claim.

### CONCLUSION AND ORDER

For the forgoing reasons, Amazon's motion for summary judgment (dkt. 35) is granted. Civil case terminated.

Date: March 31, 2026

_____
U.S. District Judge Joan H. Lefkow

---

[8] Jones also relies on *Suvada* v. *Gordon Flesch Co.*, No. 11 C 07892, 2013 WL 5166213 (N.D. Ill. Sep. 13, 2013), to argue that Amazon had a heightened duty to engage in the interactive process once he put it on notice of his disability. That case is factually inapposite, as the plaintiff in *Suvada*, a long-tenured employee who had been diagnosed with cancer, resigned after her supervisor failed to direct her to any alternative positions or resources when she raised concerns about her ability to continue in her current role. *Id*. at *7. The court found potential liability because the employer held information the employee needed and did not share it. *Id*. Here, Jones held the missing information—his medical restrictions and documentation thereof—and needed to provide it to trigger Amazon's next obligations in the bilateral process.